Jack Churchward v. Commissioner.
Churchward v. Commissioner
Docket No. 17257.
United States Tax Court
1949 Tax Ct. Memo LEXIS 184; 8 T.C.M. (CCH) 489; T.C.M. (RIA) 49115; May 17, 1949
Arthur Klein, Esq., 129 Church St., New Haven, Conn., for the petitioner. L. C. Duersten, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax for the calendar year 1943 in the amount of $3,664.94, only part of which is in issue. The material year - 1942 - is before us by virtue of the provisions of the Current Tax Payment Act of 1943. Petitioner having conceded all adjustments but one made by respondent, the sole question presented is the amount of ordinary net loss of Churchward & Co. for the period January 1, to November 30, 1942, which petitioner may individually claim. Respondent allowed petitioner but one-half, contending that the company was operated as a family partnership or joint venture consisting of petitioner and *185 his wife, whereas petitioner's position is that the business was owned and operated solely by him, and he was, therefore, entitled to claim the whole loss. Findings of Fact Petitioner, a resident of New Haven, Connecticut, filed his individual income tax returns for the period involved with the collector for the district of Connecticut. In 1916 petitioner and Martha Churchward were married, and throughout the years 1942 and 1943 were husband and wife. They were divorced in June 1948. Of this marriage, two children were born, Josephine in 1920, and Mary Joan in 1931. In December 1921 petitioner commenced the business of Churchward & Co., with initial borrowed capital of about $3,000. The business of Churchward & Co. was metallurgical engineering and small welding manufacturing. Petitioner was a licensed metallurgical engineer, and the operational phases of the company's business required such engineering knowledge. About two months thereafter, petitioner apprised his wife of the imminent possibility of bankruptcy as the borrowed funds had been lost in the business. In an effort to save the business, petitioner's wife, at that time, placed at the disposal of the business $3,000 *186 in cash, which she secured from the sale of realty which she had previously inherited from her father's estate. This was not considered as a loan to the business or to petitioner personally. A nursemaid was then employed to care for their child, and petitioner's wife undertook to devote herself to the office management of the company's affairs. The services of three employees were then terminated. No formal written partnership agreement was ever entered into. Petitioner's wife at later dates invested additional capital, which she obtained as an inheritance from her mother's estate, and devoted her full time to the company until her second child was born. In addition to general office duties, she was active in conducting the loan transactions with various banks, and executed a number of promissory notes in its behalf. After the birth of her second child, she only intermittently appeared at the company's place of business, but petitioner continued to consult with her on some general policy matters. There were no distributions of profits, as such, of the business to petitioner's wife, and no capital account was set up for her on the informal records maintained, up to and including *187 the material period herein involved. However, in 1925, two parcels of improved real estate were purchased with profits derived from the business, and the title to each parcel was taken in the individual name of Martha Churchward, and it was then, and has always been, considered that she was the owner of them. Petitioner's wife also received a salary. In 1922, there was an understanding between petitioner and his wife that she would receive as salary such an amount as the business could afford. In about 1931 or 1932 a figure of $200 per month was established. In 1938 and 1939 the agreed salary was to be $400 per month, with an additional $100 for rent of the premises occupied by the business in the property owned by Martha Churchward. Theretofore, no provision had been made for the payment of rent. At all times, the salary payments were irregular, both as to time of payment and amount. During 1942 the company paid to her $1,800. In addition, there was placed at the disposal of petitioner's wife by deposit in a joint account, against which petitioner could, but did not, draw checks, the profits of the Churchward Engineering Co., a corporation commenced in 1934 by petitioner and *188 one Farnham. Later, this was changed to a partnership in which petitioner and Farnham each had an interest. It engaged in the business of the manufacture and sale of electrode-holders, a device which petitioner developed and patented. It was not until 1938 that the engineering company began making any appreciable profits. In July 1927 petitioner filed a "Certificate of Trade Name" with the town clerk of New Haven, which had been executed by him on December 28, 1926, reciting that he was the owner of and was conducting the business known as "Churchward & Company." In 1930, a statement of Churchward & Co. was filed with the Second National Bank of New Haven for the purpose of procuring and establishing credit, executed on behalf of the company by petitioner; it was captioned as the statement of "M. S. Churchward & J. Churchward as Churchward & Co." On a retained "Work Sheet", part of a State of Connecticut tax form for the year 1938, which was to be filed by unincorporated businesses, petitioner recorded the following answers to questions appearing on the form: * * *
"2. What type of business does this return cover? Welding. * * *
"4. Name and home address of each person *189 interested in this business as an owner: - Jack Churchward, Martha S. Churchward. * * *
"11. Check if you were engaged in business during any part of the following years: 1935 X 1936 X 1937X." * * *
Late in 1942 discussions ensued between petitioner, his wife, and various attorneys with reference to a separation of their business interests. At about that time petitioner had secured a substantial subcontract for the erection of deck-houses on Navy barges. Petitioner's wife was not interested in the business to be obtained under this agreement. There also occurred incipient marital difficulties, which ultimately lead to the separation and divorce of petitioner and his wife. At that time, petitioner's wife claimed certain property rights as a partner in Churchward & Co. Late in November 1942, petitioner and his wife were finally able to agree, after extended negotiations, on the separation of their business interests. Petitioner conveyed his interest in the engineering company to his wife, and she transferred her interest in Churchward & Co. to him, and appropriate documents were executed to record the transaction. In a contract executed by petitioner and his wife contemporaneously *190 with the execution of the bills of sale, it was provided inter alia: * * * "The said Jack Churchward, acting herein for himself and for Churchward & Company and/or Churchward Welding Company, does hereby agree to save said Martha S. Churchward harmless on account of any and all liabilities or obligations, actual or contingent of Churchward & Company and/or Churchward Welding Company, now existing or that may hereafter accrue on account of any partnership that heretofore existed between them in the conduct of said businesses, and he further agrees to save her harmless from any tax liability on account of any such partnership. * * *
"The said Martha S. Churchward does hereby release and discharge the said Jack Churchward from any and all claims, demands and causes of action that she may have against him and Churchward & Company and Churchward Welding Company, and/or any of them, excepting however, her contingent claim against them on account of said sum borrowed at Tradesmens National Bank, that she may have down to the date of these presents, that exist or may arise down to the date hereof as a result of her partnership with the said Jack Churchward in the business known *191 as Churchward & Company and Churchward Welding Company." * * * Upon the advice of tax counsel, each filed a gift tax return for 1942, reflecting the transaction whereby their interests were separated, On petitioner's return, the following appears: "Interest in Churchward Engineering Co. transferred to Martha S. Churchward, 24 Cleveland Road, New Haven, Connecticut in consideration of her transfer to me of her interest in Churchward & Co. and Churchward Welding Co. The tangible values exchanged appear to be approximately equal or the differential is not in excess of $4,000, but the excess of my transfer, if any, is a gift to Martha S. Churchward." On his wife's gift tax return, the following appears: "Interest in Churchward & Co. and Churchward Welding Company transferred to Jack Churchward, 37 Water St., West Haven, Connecticut in consideration of his transfer to me of his interest in Churchward Engineering Co. The tangible values exchanged appear to be approximately equal or the differential is not in excess of $4,000, but the excess of my transfer, if any, is a gift to Jack Churchward." On petitioner's amended income tax return for 1942 he reported a "* * * loss * * * from *192 business" of $14,623.70. Respondent made and adjustment as to the total amount of loss claimed, reducing it from $14,623.70 to $12,859.84. He determined that the loss for the eleven-month period January 1, to November 30, 1942, was $7,297.78, which is not contested. He has allowed petitioner only one-half thereof, explaining this latter adjustment in the statement attached to the notice of deficiency, as follows: * * * "* * * one-half of the entire loss of $7,297.78, or $3,648.89, incurred for the eleven months' period beginning January 1st and ending November 30, 1942, is not considered deductible by you as it appears that your former wife, Martha S. Churchward, from whom you became separated and entered into a settlement agreement on or about November 25, 1942, owned such an interest in the business as to constitute her a partner until the date of exchange of your interest in the partnership of Churchward Engineering Company for her interest in Churchward Co. and Churchward Welding Co." Opinion KERN, Judge: After a careful distillation of the record herein, necessary to a separation of the facts established to our satisfaction which are pertinent to the issue before us *193 from the elements of family vendetta injected by the witnesses into the trial, we conclude that petitioner has failed to prove that respondent erred in his determination that a partnership existed between petitioner and his wife during the period January 1, 1942, to November 30, 1942. In reaching this conclusion we have been moved not so much by the wife's testimony, who was, in many respects, an unsatisfactory witness, as by the undisputed facts and circumstances shown by the record and by the acts and statements of petitioner which were inconsistent with the position taken by him in this proceeding, see Higgins v. Smith, 308, U.S. 473. At the time of the trial, the bill of sale and the agreement executed by petitioner in November 1942 and identified as Exhibits A and B, were admitted in evidence over petitioner's objections. At the close of the hearing petitioner moved that these exhibits be stricken. He argues that they were executed as a result of a compromise and in order to avoid litigation which his wife threatened to institute. He concludes, therefore, that they are inadmissible under the general rule of evidence, excluding offers of compromise. 22 C.J., sec. 347. Even if *194 we were to grant petitioner's motion, the final result of this proceeding would be unchanged for the impugned exhibits are merely cumulative of other evidence in the record not under attack. However, it is our opinion that petitioner's motion must be denied, and we conclude that the two documents were properly admitted in evidence at the hearing. 31 C.J.S. 1042, 1050. See Huntley v. Snider, (CCA-1), 86 Fed. (2d) 539, 540, rehearing denied, 88 Fed. (2d) 335, wherein it was stated: "* * * The rule that offers of compromise will not be received as admissions of liability applies only between parties and has no application to a completed transaction * * *." 2 Chamberlayne on Evidence § 1442. Decision will be entered for the respondent.